**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

PAUL L. SPENCER,

    Plaintiff,

v.                                       CASE NO. 08-CV-12108

COMMISSIONER OF                DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 12.)

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 19.) Plaintiff's relevant employment history includes work as a maintenance electrician for 27 years. (Tr. at 79.) Plaintiff last worked in November 2004. (*Id.*)

Plaintiff filed the instant claim on November 8, 2005, alleging that he became unable to work on November 4, 2004. (Tr. at 45.) The claim was denied at the initial administrative stages. (Tr. at 36.) In denying Plaintiff's claims, the Defendant Commissioner considered essential hypertension and disorders of back, discogenic and degenerative, as possible bases of disability. (*Id.*)

On October 18, 2007, Plaintiff appeared with counsel before ALJ Richard L. Sasena, who considered the instant application for benefits *de novo*. In a decision dated December 17, 2007, the ALJ found that Plaintiff was not disabled at any time prior to the expiration of his eligibility for benefits. (Tr. at 16-26.) Plaintiff requested a review of this decision on December 31, 2007. (Tr. at 13.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 24, 2008, when, after the review of

additional exhibits[2] (Tr. at 7, 364-386), the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On May 14, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Gary Chodoroff, M.D., for stiffness and soreness across the back due, at least in part, to fluid collection in his thoracolumbar subcutaneous tissue. (Tr. at 202-06.)

Plaintiff was hospitalized after falling down at work on November 4, 2004. (Tr. at 230-37.) At that time, he was diagnosed with "syncope, etiology to be determined," "contusion to the right cheek and right forearm," "small laceration to the left hand," "exogenous obesity," and "gastroesophageal reflux disease and chronic leg pain." (Tr. at 223-35.) An cardiac exercise stress test performed during this hospitalization showed normal heart wall motion and was negative for iscemia. (Tr. at 229.) A CAT scan of the brain was normal. (Tr. at 231.)

Plaintiff was diagnosed with sleep apnea in July of 2005. (Tr. at 184.)

Plaintiff was treated by Joseph L. Kummar, M.D., and Matthew Ebinger, M.D., for the vasovagal syncopal episodes that caused his fall. Drs. Kummar and Ebinger noted that Plaintiff underwent testing, including echocardiograms, nuclear stress tests, an EKG, and an event monitor. (Tr. at 181, 241.) In July of 2005, they concluded:

> There is no evidence of structural heart disease, and his heart monitor displayed no arrhythmias. Therefore, the likelihood of this [syncope] being due to an arrhythmiac etiology is very low . . . . we have no absolute answer that will assuredly rid him of these episodes.

(Tr. at 242, also 122.) By October of 2005, however, Dr. Ebinger noted that Plaintiff "has had dramatic improvements on his current medications [and] has had a 7-month period without any

7

episodes of dizziness or lightheadedness, and we repeated his tilt-table test on the medication documenting a negative tilt." (Tr. at 244.)  Dr. Ebinger was "very pleased with the results of the medication, and I think this will likely bring a dramatic change in his quality of life [and] I do feel that he can return to work at this time." (*Id.*)  Dr. Ebinger further noted that Plaintiff should avoid work on ladders and that he "cannot guarantee even on the medication that [Plaintiff] may not have an event ever again in his life." (*Id.*)

In August of 2005, Plaintiff was evaluated for "numerous injuries that he sustained when he fell off a bike" including sprained wrists, a sprained right elbow, and a fracture of the left radial neck." (Tr. at 177.)  Plaintiff was bike riding for exercise at the time and his fall was not related to any syncopal episodes. (Tr. at 399.)

In August 2005, Plaintiff was evaluated for physical therapy for left wrist and elbow pain and was instructed on exercises to perform at home. (Tr. at 219-22.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 4, 2004, through December 31, 2010.  (Tr. at 21.)  At step two, the ALJ found that Plaintiff's status post head injury with trauma to thoracic and lumbar region at lumbar vertebrae, history of vasovagal syncope, deep vein thrombosis, and pulmonary embolism, obesity and sleep apnea were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 22.)  At step four, the ALJ found that Plaintiff could not perform his previous work as a maintenance electrician.  (Tr. at 24.)  At step five, the ALJ concluded that Plaintiff was

8

a younger individual on the alleged disability onset date, at 49 years old, that Plaintiff was 52 years old at the time of the hearing, which is defined as an individual approaching advanced age. (*Id.*) The ALJ further found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work, and that he could perform jobs that exist in significant numbers in the economy of Southeastern Michigan, such as cashier (2,500 jobs). (Tr. at 25.)

### F.    Residual Functional Capacity

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity ("RFC") to return to a limited range of light work. (Tr. at 25.)  Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### G.    Analysis and Conclusion

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where

substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ failed to give proper weight to the effects of Plaintiff's vasovagal syncope, specifically that the ALJ ignored the recurrent nature of the syncopal episodes which Plaintiff experienced in September 30, 2003, November 4, 2004, and in May 2005. (Dkt. 9 at 8, 14-15.) Plaintiff further contends that the hypothetical posed to the vocational expert ("VE") also failed to "adequately account for the severity, unpredictability, and untreatability [sic] of [Plaintiff's] syncopal episodes." (Dkt. 9 at 18.) Finally, Plaintiff argues that the ALJ's conclusions fail to give proper, controlling weight to the conclusion drawn by Dr. Chodoroff, Plaintiff's treating physician, that Plaintiff is unable to work. (Dkt. 9 at 20.)

As to Dr. Chodoroff's conclusion, Plaintiff relies on a statement made by Dr. Chodoroff on February 10, 2005, where he stated, "I do not feel that [Plaintiff] is capable of working at this time" and that he would "not institute therapy until [he] receive[s] clearance from the primary care physician . . . ,but also noted that Plaintiff "has had good results from that facility in the past." Tr. at 197.) I suggest that this phrase does not equate with a conclusion that Plaintiff is disabled. Instead, it is limited in scope to "at this time" and does not preclude the possibility that Plaintiff may be able to work in the future, especially in light of the hopeful note that Plaintiff had enjoyed success through physical therapy in the past and the comment that Dr. Chodoroff was waiting for "clearance" from another physician before feeling confident to affirmatively state Plaintiff could return to work. Therefore, I suggest that the ALJ did not improperly ignore a treating physician's conclusion that Plaintiff is disabled.

10

I further note that the doctors who treated Plaintiff for his syncopal episodes concluded that Plaintiff could return to work in October 2005. (Tr. at 244.) Although Plaintiff could not be assured that he will never experience further syncopal episodes, his doctors stated that Plaintiff "had dramatic improvements on his current medications" and that his tilt-table test results were normal, causing Dr. Ebinger to be optimistic in his outlook for Plaintiff's future quality of life. Dr. Ebinger recommended that Plaintiff return to work but avoid working on ladders. (*Id.*)

As to Plaintiff's claims that the ALJ failed to take into account the recurrent nature, severity and lack of cure for the syncopal episodes in the hypothetical, I suggest this argument is also unavailing. Plaintiff indicated that he can walk for 20 minutes at a time, then needs to "rest for a bit," that he can sit for up to 45 minutes before needing to "move around a bit," and that he can lift 20 pounds. (Tr. at 400-02.) Plaintiff also testified that he has the following warning signs before experiencing a syncopal episode: "sweating profusely, the hairs on my arms start to tingle and twitch like there, like there's something crawling on it, my hearing gets muted, and I start getting tunnel vision." (Tr. at 403.) He further testified that he has from 45 seconds to one and one-half minutes between the symptoms and the time he passes out. (Tr. at 403.) The hypothetical asked the VE to consider a similarly situated person, closer to advanced age, who could perform light work but could not use ladders. (Tr. at 406-07.)

I suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself that he provides all of his own personal care, goes to the mall for walking, does light housekeeping and cleaning, does his own laundry, landscaping, mowing, and snow blowing, shops for groceries, prepares meals, watches television, uses a computer, and goes to church and to restaurants. (Tr.

at 67-70.)  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  I further suggest that Plaintiff's ability to ride a bicycle for exercise in August 2005 lends support to the ALJ's conclusion that Plaintiff's vasovagal syncope would not prevent him from performing a limited range of light work.  (Tr. at 177, 399.)

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is, on this record, supported by substantial evidence, and is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.**     **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ Charles E Binder
                                                CHARLES E. BINDER
Dated: January 7, 2009                      United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Norton J. Cohen, Vanessa Miree Mays, and the Commissioner of Social Security, and served on District Judge Edmunds in the traditional manner.

Date: January 7, 2009        By     s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder